UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE LEE WILLIAMS, | No. C 12-3310 SI (pr) |
| Plaintiff, | **ORDER OF SERVICE** |
| v. | |
| MELINDA HAAG, United States Attorney; et al., | |
| Defendants. | |

## INTRODUCTION

Lawrence Lee Williams, an inmate at the Santa Clara County Jail, filed this *pro se* civil rights action under 42 U.S.C. § 1983. The court dismissed the complaint with leave to amend. Williams then filed an amended complaint (Docket # 25), which is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

Williams complains about jail medical staff's response to his medical needs at the Santa Clara County Jail, where he has been incarcerated since December 16, 2011. His amended complaint is far from a model of clarity but appears to allege the following:

Nurse practitioner O'Keefe refused to provide any medical treatment for Williams on January 3, 2012 because he would not walk to her. *See* Docket # 25, p. 2. He alleges that he was unable to walk without excessive pain.

On January 11, 2012, Dr. Nguyen refused to order pain medication that Williams needed. Dr. Nguyen did order a refill of a benadryl prescription. In response to Williams' complaints of internal bleeding, Dr. Nguyen did a rectal exam and said Williams was not bleeding. Dr. Nguyen asked Williams to sign a consent to obtain knee x-rays from the Veterans' Administration, where Williams apparently had been treated in the past. Dr. Nguyen set Williams' next appointment for March 16, 2012.

In the two months following the January 11, 2012 appointment, Williams filed requests for Tylenol, Maalox, and milk of magnesia, as well as for help with his bleeding. He received a stronger laxative and stool softener.

On March 12, 2012, registered nurse Rosario came to Williams' cell. Williams told him that he had internal bleeding, constipation and sores. Williams did not see a doctor until March 23.

On March 20, 2012, Shone, a male nurse, came to Williams' cell with an order from Dr. Nguyen to discontinue the wheelchair and cane. *See* Docket # 25, p. 4. (Elsewhere, Williams states that Linda O'Keefe, Dr. Nguyen and Dr. Chyorny signed the order discontinuing the wheelchair and cane. *See id.* at 5.) From March 14, 2012 through July 23, 2012, Williams experienced great pain trying to walk because his wheelchair had been taken away.

Williams was moved to general population in a new housing unit. There, he made a homemade cane that was confiscated by officer Hovington. Attorney Dobbyn said he would call the medical department, but first he had to check with his supervisor. Another correctional officer saw that Williams was having difficulty walking and a cane was returned to Williams that night.

On March 23, 2012, Williams experienced great pain as he had to walk to see Dr. Nguyen. Dr. Nguyen said he had discontinued the wheelchair because the V.A. records did not show Williams' knee problems. Dr. Nguyen ordered x-rays and said he would consider a wheelchair after the x-rays were done. *See* Docket # 25, p. 6. Dr. Nguyen did another rectal exam and said there was no blood. He also ordered some lotion and cream for the sores on Williams' back.

2

After the March 23 appointment, Williams fell as he tried to walk back to his cell. A correctional officer summoned a nurse, who examined his swollen leg. They obtained a rolling desk chair because a wheelchair could not be found, and pushed Williams back to his cell, with instructions to elevate his knee.

On March 24, 2012, his knee was x-rayed. The x-ray showed shot gun pellets in his hip and/or knee. He did not get his wheelchair back, but was allowed to go to court in a wheelchair.

After Williams went to court on June 3, 2012, he received a chrono allowing him to have a wheelchair to go to court, and to receive a wheelchair for medical and court appointments upon request. *See id.* at 7-8.

Williams also complains of alleged constitutional violations in the criminal proceedings against him, such as holding the preliminary hearing and other proceedings in his absence. *See* Docket # 25, p. 8. Williams also alleges that his defense attorneys did not adequately implement the judge's orders, such as the order to jail officials to provide a wheelchair and perhaps medical care.

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Deliberate indifference to a prisoner's serious medical needs violates the Eighth

3

Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 102-04 (1976). To prove that the response of prison officials to a prisoner's medical needs was constitutionally deficient, the prisoner must establish (1) a serious medical need and (2) deliberate indifference to that need by prison officials. *See McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Williams' allegations suggest that he was a pretrial detainee at the relevant time. His claims therefore arise under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause, as the latter only applies to convicted prisoners. *See Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996). Even though a pretrial detainee's claims arise under the Due Process Clause, the Eighth Amendment serves as a benchmark for evaluating those claims. *See Carnell*, 74 F.3d at 979.

Liberally construed, the *pro se* amended complaint states cognizable claims against nurse practitioner Linda O'Keefe and Dr. Nguyen for violations of Williams' Eighth Amendment rights based on the alleged denial of a wheelchair and cane, denial of adequate pain medication, and the failure to adequately care for the internal bleeding Williams was experiencing. The *pro se* complaint also adequately states a cognizable claim against Dr. Chyorny based on his alleged role in signing the order discontinuing the wheelchair and cane.

Williams alleges that his wheelchair and cane were taken away to retaliate against him because he asked the judge in his criminal case for help. *See* Docket # 25, p. 5. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Even with liberal construction, the amended complaint does not state a claim for retaliation. The allegations of the amended complaint allege that the members of the medical staff were making efforts to separate Williams from his wheelchair and cane before Williams asked the judge for help. An

4

1 action that takes place before protected conduct cannot be said to be caused by the protected
2 conduct. The amended complaint also does not allege any facts suggesting that defendants were
3 even aware of Williams' requests to the judge at the time they made their decisions with regard
4 to the wheelchair and cane. The retaliation claim is dismissed.

Williams' claims of alleged constitutional violations in his criminal case are dismissed. First, insofar as Williams is claiming that his attorneys and other people were not adequately implementing the superior court's orders, that claim must be pursued in the superior court case or in an appeal in that case. A § 1983 action does not lie to enforce the superior court orders because a state court order does not provide a right secured by the Constitution or laws of the United States, the violation of which is a necessary element of a § 1983 claim. *See generally Green v. McKaskle*, 788 F.2d 1116, 1123-24 (5th Cir. 1986) (remedial decrees are means by which unconstitutional conditions are corrected but do not create or enlarge constitutional rights); *DeGidio v. Pung*, 920 F.2d 525, 534-35 (8th Cir. 1990). To the extent he wants to assert claims that court orders in his criminal case have been violated, Williams must apply for relief in that case. Second, state court criminal defendants cannot sue their lawyers in federal court for most lawyer-type mistakes. A public defender does not act under color of state law, an essential element of an action under 42 U.S.C. § 1983, when performing a lawyer's traditional functions, such as entering pleas, making motions, objecting at trial, cross-examining witnesses, and making closing arguments. *Polk County v. Dodson*, 454 U.S. 312, 318-19 (1981). The alleged failure to ensure that the client was present at hearings and court proceedings is such a lawyer-type mistake, if it was an error at all. Third, Williams' complaints about the activities in his criminal case are not properly joined with his medical care claims. If Williams wishes to assert claims about constitutional violations in the criminal case pending against him, he may file a new action doing so.[1]

---

[1] Williams may wish to wait to file that action until he has some success in his criminal case to so in order to avoid prematurely incurring another filing fee. The case of *Heck v. Humphrey*, 512 U.S. 477 (1994), held that a plaintiff cannot bring a civil rights action for damages for a wrongful conviction unless that conviction already has been determined to be wrongful. *See id.* at 486-87. A conviction may be determined to be wrongful by, for example, being reversed on appeal or being set aside when a state or federal court issues a writ of habeas

**CONCLUSION**

1. The amended complaint, liberally construed, states a cognizable § 1983 claim against nurse practitioner Linda O'Keefe, Dr. Nguyen and Dr. Chyorny under the Due Process Clause for deliberate indifference to Williams' medical needs. All other defendants and claims are dismissed.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint and a copy of all the documents in the case file upon these three persons, who apparently work on the medical staff at Santa Clara county Jail: (1) nurse practitioner Linda O'Keefe, (2) Dr. Nguyen, and (3) Dr. Chyorny.

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

    a. No later than **February 15, 2013**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the court prior to the date the motion is due. If defendants file a motion for summary judgment, defendants must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012). If defendants file a motion to dismiss for non-exhaustion of administrative remedies, defendants must provide to plaintiff a notice regarding motions to dismiss for non-exhaustion procedures at the time they file such a motion. *See Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012).

    b. Plaintiff's opposition to the summary judgment or other dispositive motion

---

corpus. *See id.* The practical importance of this rule is that a plaintiff cannot attack his conviction *in* a civil rights action for damages; the conviction must have been successfully attacked *before* the civil rights action for damages is filed. The *Heck* rule bars an action only if there is an existing conviction and does not bar "an action which would impugn *an anticipated future conviction.*" *See Wallace v. Kato*, 549 U.S. 384, 393 (2007). Nonetheless, the claim should not go forward if the plaintiff's criminal proceedings are still pending; rather, the court can "stay the civil action until the criminal case or the likelihood of a criminal case is ended." *See id.* If Williams filed an action that was covered by the *Heck* rule, that action would be stayed immediately under *Wallace v. Kato*, and would remain stayed forever unless the criminal charges against Williams were dismissed or his conviction was set aside. Even though the action would be stayed, he would be obliged to pay the filing fee.

1 must be filed with the court and served upon defendants no later than **March 15, 2013**. Plaintiff
2 must bear in mind the notice and warning regarding summary judgment provided later in this
3 order as he prepares his opposition to any motion for summary judgment. Plaintiff also must
4 bear in mind the notice and warning regarding motions to dismiss for non-exhaustion provided
5 later in this order as he prepares his opposition to any motion to dismiss.

6    c. If defendants wish to file a reply brief, the reply brief must be filed and
7 served no later than **March 29, 2013**.

8   4. Plaintiff is provided the following notices and warnings about the procedures for
9 motions for summary judgment and motions to dismiss for non-exhaustion of administrative
10 remedies:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).
>
> The defendants may file a motion to dismiss for failure to exhaust administrative remedies instead of, or in addition to, a motion for summary judgment. A motion to dismiss for failure to exhaust administrative remedies is similar to a motion for summary judgment in that the court will consider materials beyond the pleadings. You have the right to present any evidence you may have which tends to show that you did exhaust your administrative remedies or were excused from doing so. The evidence may be in the form of declarations (that is, statements of fact signed under penalty of perjury) or authenticated documents (that is, documents accompanied by a declaration showing where they came from and why they are authentic), or discovery documents such as answers to interrogatories or depositions. In considering a motion to dismiss for failure to exhaust, the court can decide disputed issues of fact with regard to this portion of the case. If defendants file a motion to dismiss and it is granted, your case will be dismissed and there will be no trial. *See generally Stratton v. Buck*, 697 F.3d at 1008-09.

27   5. All communications by plaintiff with the court must be served on a defendant's
28 counsel by mailing a true copy of the document to defendant's counsel. The court may disregard

7

any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

      6.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

      7.     Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

      8.     Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

IT IS SO ORDERED.

Dated: November 27, 2012

_____
SUSAN ILLSTON
United States District Judge